14

## STATE OF HAWAII, Plaintiff-Appellee, *v.* GEORGE DAMAS, JR., Defendant-Appellant

### NO. 7194

JUNE 5, 1980

HAYASHI, C.J., PADGETT AND BURNS, JJ.

*Per Curiam.* In this case, appellant was tried by jury for theft in the first degree. Appellant moved for a judgment of acquittal at the close of the prosecution's case and again after the verdict was returned against him. The principal question argued is whether there is substantial evidence of each essential element of the indictment to support the verdict. *State v. Cannon,* 56 Haw. 161, 532 P.2d 391 (1975).

The facts in this case are as follows: One John Wells was arrested and brought to the police station. His personal property was taken from him, inventoried and placed in a brown paper bag. The blue copy of the property receipt was kept in a book on a desk in the receiving area and the pink copy was stapled to the bag. The bag and receipt were placed in cubbyhole W in a locked cabinet in an open vault in the police station headquarters. The key to the cabinet was kept in a deskdrawer in the headquarters attached to a small brown notebook in which persons were supposed to record their names together with the times when they took the key and opened the vault.

Because Wells was arrested on a warrant from the island of Maui, he was held from late in the evening of March 14th until the morning of the 16th, 1978 without being sent to court. Sometime during that period, Officer Donnelly opened the bag to look inside to see if the original of the warrant for Wells' arrest was in the bag. It was not. On the morning of the 16th when the bag was opened in Wells' presence, $371 in cash was missing from the bag.

According to Officer McCarthy who originally took the property from Wells and placed it in the bag, he folded the bag once, stapled it three times and stapled the property receipt to the bag. When Donnelly opened the bag later, it had already been folded twice and stapled. After Donnelly opened the bag, he again folded it twice and stapled it. The bag itself contained numerous staple holes and two folds when introduced into evidence.

Prosecution witnesses who handled the bag at one time or another, were Officers McCarthy, Porter, Fujimura and Donnelly; in addition, Wells touched the bag. Prosecution witnesses who touched the property receipt at one time or another were Officers McCarthy, Victorino, Porter, Fujimura, Soon and Donnelly; Wells also touched the property receipt.

After the disappearance of the money was discovered, the bag, the property receipt and a bus transfer found in the bag but not noted on the property receipt, were tested for fingerprints. According to Officer Afualo, she developed nine prints — three on the bag, four on the property receipt and two on the bus transfer. The prints developed were tested only against the prints of McCarthy, Wells, Donnelly, Victorino and the appellant. One print of the appellant was found on the bag and two on the property receipt. One print from Wells was found on the bag and two prints from Donnelly were found on the property receipt. The other prints were not tested against the prints of the other persons who admittedly had touched the bag nor against the prints of the other police officers who had signed the booklet attached to the key showing that they had access to the bag during the approximately 32 hours it was in the vault. Nor were any of the remaining prints checked against the prints of the numerous other police officers who had access to the vault during that period. The evidence did indicate that although officers were supposed to sign the booklet whenever they used the key, they did not always do so.

The evidence relied upon by the prosecution to establish beyond a reasonable doubt that appellant was the person who took the money from the bag consisted of (1) his fingerprint on

the bag and his two fingerprints on the property receipt which had been stapled thereto; (2) the fact that in the early morning hours on March 16th, in discussing the disappearance of the money from another bag, he mentioned to Officer Mattson that perhaps Wells' bag should be looked at because it contained $370, and (3) when questioned by Officer Rasmussen about 1:00 p.m. in the afternoon on the 16th, he denied having touched the bag but later that evening he came back to tell Rasmussen that he remembered having gone into the vault to put in the property of one Shimabukuro on the morning of the 15th and, upon finding Wells' bag in the S cubbyhole, had moved it to the W cubbyhole.

The blue carbon copy of the property receipt was kept in a book accessible to all persons working in the receiving area. In this case, access to the bag containing the money was available to four shifts of policemen, with each shift containing up to 8 persons; moreover, the mysterious bus transfer that did not belong to the owner of the other property contained two apparently identifiable fingerprints that were never identified. In addition, there were other identifiable but unidentified fingerprints on the bag and on the property receipt. Moreover, fingerprints from persons who admitted touching the bag and the property receipt were not found. The property receipt which was attached to the bag stated on its face the amount of money contained therein.

In these circumstances, the fingerprint evidence, appellant's knowledge of the fact that the bag contained $370 and the fact that he did not on the first occasion tell Officer Rasmussen about moving the bag do not constitute substantial evidence that the appellant was the one who took the money. Accordingly, the judgment below is reversed.

*William Amona* for defendant-appellant.

*Albert Esposito* for plaintiff-appellee.